**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RONALD TERELL STOCKTON | |
| Appellant | No. 1172 MDA 2015 |

Appeal from the Judgment of Sentence of November 13, 2014
In the Court of Common Pleas of Huntingdon County
Criminal Division at No.: CP-31-CR-0000254-2014

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.: **FILED DECEMBER 04, 2015**

Ronald Stockton appeals, *pro se*, his November 13, 2014 judgment of sentence, which was imposed after Stockton was convicted by a jury of aggravated assault, 18 Pa.C.S. § 2702(a)(3). We affirm.

On December 20, 2013, Stockton was housed as an inmate on the "K Block" at the State Correctional Institution at Smithfield, in Huntington County, Pennsylvania. On the date in question, Correctional Officer Adam Park was controlling the K Block operations when he accidentally opened the wrong set of cell doors. Stockton was residing in one of the cells that Officer Park accidentally opened. Stockton immediately exited his cell. Officer Park ordered Stockton to return to his cell. Stockton initially ignored the order,

---

[*]    Former Justice specially assigned to the Superior Court.

and told Officer Park that, because he let Stockton out, he could put him back in. Stockton then returned to his cell and put on his red prison jumpsuit. He then came back out into the general prison area. Officer Park sealed off the area and then informed other correctional officers about the situation.

Officer Ryan Willinsky was one of the first correctional officers to approach Stockton. Officer Willinsky repeatedly ordered Stockton to return to his cell, which Stockton ignored. Officer Willinsky then ordered Stockton to face the wall and place his hands behind his back to be handcuffed. Stockton also ignored that order. Instead of complying, he took a defensive stance, pushed Officer Willinsky away, and attempted to punch Officer Willinsky in the face. Stockton then threw multiple other punches at Officer Willinsky, many of which landed on Officer Willinsky's head and neck. Other officers appeared on the scene and attempted to subdue Stockton. Stockton refused to comply with the officers. Stockton began kicking at the officers, continuing to do so until five correctional officers were able to get Stockton to the ground and under control.

Correctional Officer Timothy Barndt also was involved in the attempt to subdue Stockton. During the melee, Officer Barndt was struck in the face and head two or three times by Stockton. Eventually, the officers placed Stockton in leg shackles and took him to be evaluated by the prison's medical services.

Following a jury trial, Stockton was convicted of aggravated assault, as noted above. On November 13, 2014, the trial court sentenced Stockton to twenty-seven months to one hundred months' incarceration. Stockton filed post-sentence motions on the same date. Before the trial court ruled upon the motions, Stockton filed a notice of appeal on January 22, 2015.[1] This Court quashed that appeal, because it was premature due to the pending post-sentence motions. Thereafter, Stockton notices of appeals on April 9, 2015, and on July 8, 2015. Both were filed before the trial court ruled on Stockton's post-sentence motions. Stockton also filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 18, 2015, the trial court, although recognizing the prematurity of the appeal, filed an opinion pursuant to Pa.R.A.P. 1925(a).

In the interim, on July 22, 2015, this Court issued to Stockton a rule to show cause as to why the instant appeal should not be quashed as premature. On August 10, 2015, Stockton replied to our directive, and noted that he had filed a praecipe with the trial court to enter an order denying the post-sentence motions. On August 12, 2015, the trial court entered such an order. This Court then discharged the rule to show cause, and determined that the appeal need not be quashed.

---

[1] Stockton has represented himself throughout the appellate proceedings, and continues to do so. Notably, the trial court permitted him to represent himself following a **Grazier** hearing. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988).

Stockton raises a total of twenty-four issues for our review, all but two of which we must deem to be waived. Stockton's issues, which we produce *verbatim*, are as follows:

1. Whether the trial court lacked jurisdiction without an arrest for the felony charges, and utilized a summons procedure?

2. Whether Magistrate Judge violated the six amendment of the U.S.A. when Aplt. requested to proceed prose at April, and May preliminary hearings, and no colloquy hearing was held?

3. Whether trial judge violated the six amendment of the U.S.A. Constitution when he failed to hold a colloquy hearing once Aplt. requested to proceed prose at arraignment?

4. Whether trial judge abused discretion when without notice turned an arraignment proceeding into pretrial, last day for discovery, and pretrial motions, which deprived Aplt. of adequate preparation of a fair trial violating due process?

5. Whether judgment of sentence is void for vagueness as it does not state any authority govern the sentence, nor state any statute govern deduction of cost, which also violated due process?

6. Whether Act 122 of Dec. 20, 2000, requires the D.O.C. to cover the cost throughout trial, thus, Aplt's sentence is illegal?

7. Whether the D.A. obtained a conviction through known false statements/testimony, which is fraud upon the court, jury, and people of the Commonwealth creating a miscarriage of justice, which no civilize society can tolerate?

8. Whether video footage used at trial show that C.O.'s statements in affidavit of probable cause, Complaint, and Preliminary hearing transcripts under oath are false due to Aplt. shown backing away, not leaping forward and striking C.O.'s upon entering the unit?

9. Whether trial judge abused discretion when Judge failed to [] strike jurors for cause who were best friends with the D.A., and D.A.'s witness depriving Aplt. of a fair trial and jurors with predetermined, and prejudicial statements in questioniars under the penalty of perjury depriving Aplt. of a fair trial?

10. Whether trial judge abused discretion when judge failed to insure that a compulsory process was in place to insure production of evidence depriving Aplt. preparation to attack impeach, and have a fair trial, thus, denying due process?

11. Whether the six Amendment of the United States of America Constitution does not merely provide that a defense be made, but grants the accused personally the right to make a defense?

12. Whether the D.A./Assistant committed an offense of tampering when knowingly entered preliminary hearing transcript's containing false testimony as evidence at 9-12-14 video conference?

13. Whether under set of facts counsel was ineffective?

14. Whether the D.A./Assistant had a duty to correct False testimony it knows to be false after reviewing video?

15. Whether trial judge abused discretion when Judge failed to carry out his own order (9-2-14) when the D.A. stated that they were still waiting for video from the D.O.C. on 9-12-14 at video conference?

16. Whether under any set facts trial Judge abused Discretion?

17. Whether the only recourse after the deprivation of life, liberty, and limb without due process is to restore liberty?

18. Whether once a judgment is void it cannot be reprived?

19. Whether without the false testimony, there would be no corpus delicti?

20. Whether trial Judge abused his discetion when Judge denied Aplt. a continuance at 9-12-14, video conference when Aplt. informed Judge that Aplt. received partial

discovery on 9-10-14, and needed time to prepare for trial violating the six Amendment of the U.S.A. constitution?

21. Whether Aplt. suffered prejudice wearing a shock belt throughout trial, the informing jury that Aplt. was currently a prisoner instead of a prisoner at the time of alleged incident?

22. Whether trail Judge abused discretion when he answer a Question during trial for the D.A.'s witness (Lt.Bard) with a false statement, informed trial counsel not to file Interlocutory appeal for Habeas Corpus Petition, and motion to dismiss as Aplt. requested at 9-12-14, video conference?

23. Whether Pa.R.A.P.905, insures that the trial court file Notice of Appeal as if filed when order became final?

24. Whether Judge violated Pa.R.Crim.P.576, and right to be heard, abusing discretion stating nothing from Aplt. will be excepted for filing?

Brief for Stockton at 4-5.

In the argument section of his brief, Stockton lists thirty-three points of law that purportedly support the questions as presented above. In many instances, the principle of law do not align numerically with the questions presented, and, in all instances, Stockton does not provide the factual or circumstantial background necessary to comprehend the argument that he is trying to make. More succinctly, Stockton provides us with a laundry list of legal principles, but does not actually apply those principles to his case in any manner that resembles a legal argument. The failure to do so necessarily results in waiver of all of his issues, save for those that touch upon the non-waivable issues of jurisdiction and legality of sentence. ***See Commonwealth v. Walter***, 966 A.2d 560, 566 (Pa. 2009) (stating that the

failure of an appellant to develop an argument in a meaningful fashion that is capable of appellate review results in wavier); ***Commonwealth v. Jones***, 929 A.2d 205, 208 (Pa. 2007) (explaining that matters touching upon subject matter jurisdiction are non-waivable); and ***Commonwealth v. Foster***, 960 A.2d 160, 163 (Pa. Super. 2008) (noting that claims implicating the legality of a sentence are non-waivable).

In his first issue, Stockton argues, to the best that we can decipher, that the trial court lacked jurisdiction over him because he was never formally arrested on his felony charges. The cases that he cites in the argument section of his brief touch upon jurisdiction generally, but have no specific application to the claim that Stockton is pursuing.

In ***Commonwealth v. Seiders***, 11 A.3d 495 (Pa. Super. 2010), we set forth the following governing standards pertaining to a trial court's subject matter jurisdiction in a criminal case:

> Subject matter jurisdiction speaks to the competency of a court to hear and adjudicate the type of controversy presented. ***Commonwealth v. Bethea***, 828 A.2d 1066, 1074 (Pa. 2003). Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the scope of review is plenary. ***Commonwealth v. John***, 854 A.2d 591, 593 (Pa. Super. 2004) . . . . Controversies stemming from violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution. ***Bethea***, 828 A.2d at 1074; 18 Pa.C.S. § 102. All jurists within that tier of the unified judicial system are competent to hear and resolve a matter arising out of the Crimes Code. ***Bethea***, 828 A.2d at 1074; Pa. Const. Art. 5, § 5 (establishing the jurisdiction of the courts of common pleas within the unified judicial system); 42 Pa.C.S. § 931(a)(defining the unlimited original jurisdiction of the courts of common pleas).

While each court of common pleas in this state possesses the same subject matter jurisdiction to decide cases arising under the Crimes Code, that "jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances." **Bethea**, 828 A.2d at 1074.

The law is clear that the locus of a crime is always in issue, for the court has no jurisdiction [over] the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.] For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county. In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient.

**Commonwealth v. Boyle**, 532 A.2d 306, 309-10 (Pa. 1987).

**Seiders**, 11 A.3d at 496-97 (footnote omitted; some citations modified).

Applying these general principles, we detect no defect in the trial court's jurisdiction. Stockton was charged, tried, and convicted of a violation of the Crimes Code in Huntington County, where the criminal act took place. The fact that he was notified by summons of his charges, instead of being formally arrested and booked at a police station, has no bearing upon the above jurisdictional analysis. He is not entitled to relief on this issue.

Finally, we turn to Stockton's second stated issue, which is the only issue in which he appears to challenge the legality of his sentence. Stockton seems to argue that a particular law, which he does not identify with any form of precision that would allow us to determine which law he is discussing, either is invalid or does not exist. Based upon these bald assertions, Stockton believes that his current incarceration is illegal.

Even though a challenge to the legality of a sentence is non-waivable, we are unable to respond to Stockton's issue in any meaningful way. We have no way of knowing which law he is referring to, and we are unable to comprehend his argument so that we may sufficiently resolve his claim as he wants it to be reviewed. Nonetheless, having reviewed the record, we discern no illegality in his sentence. He was convicted of aggravated assault, a statutory crime which remains valid and enforceable, and was sentenced to a period of incarceration that did not exceed the statutory maximum for that crime. Stockton was convicted of subsection (a)(3) of the aggravated assault statute, which is a second-degree felony. *See* 18 Pa.C.S. § 2702(b). The maximum penalty for a second-degree felony is ten years. *See* 18 Pa.C.S. § 1103. Thus, Stockton's maximum sentence of one hundred months did not exceed the statutory maximum. As noted, we observe no other viable arguments regarding the legality of Stockton's sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/2015

- 9 -