J-S01017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DONALD ANTHONY BURKHART JR. | : | |
| | : | |
| Appellant | : | No. 810 MDA 2021 |

Appeal from the PCRA Order Entered May 20, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0007022-2018

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY NICHOLS, J.: **FILED: MARCH 29, 2022**

Appellant Donald Anthony Burkhart Jr. appeals *pro se* from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant raises numerous claims of ineffective assistance of trial, direct appeal, and PCRA counsel. Appellant also challenges the constitutionality of the terroristic threats statute, the weight and sufficiency of the evidence, and the legality of his sentence. Additionally, Appellant has filed three applications for relief. We affirm the PCRA court's order and deny Appellant's applications for relief.

---

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

A previous panel of this Court summarized the underlying facts of this matter as follows:

On June 7, 2019, [Appellant] was found guilty of one count each of terroristic threats graded as a felony of the third degree and terroristic threats graded as a misdemeanor of the first degree. The convictions relate to multiple threats [Appellant] made to certain staff at UPMC [Pinnacle] Lititz hospital throughout the day on November 20, 2018. [Appellant] was at the hospital that day with his partner for the delivery of his child by means of a scheduled cesarean section. [Appellant] first manifested his anger to Dr. Jill Satorie and to his partner in the operating room when he claimed a male anesthesiologist saw his partner's "butt crack." After the delivery, [Appellant's] agitated demeanor continued to escalate[,] with [Appellant] and his partner continually arguing with each other, [Appellant] discouraging an examination of his partner that was recommended, threatening Dr. Satorie that his partner might kick her and hurt her if the examination were performed, [Appellant's] asking Nurse Dana Mastromatteo when they could perform a paternity test on the baby, explaining that he wanted to know if the baby was a miracle or "something else" because [Appellant] had a vasectomy[,] and [Appellant's] becoming agitated [and] confrontational about wanting to bring his pit bull into the hospital room.

Later, when a decision was made to move the baby to the NICU due to respiratory issues and the atmosphere in the room, [Appellant] became particularly agitated and stated that he felt like the hospital was kidnapping the baby. When a clinical nurse manager, Eliza Zeidman, came to speak with [Appellant] about the transfer of the baby, [Appellant] pointedly told her that he had previously done time in jail and was not going to go back and then he asked if she understood what he was saying. Nurse Zeidman reported the threat to her boss who she believe[d] reported it to security. [Appellant] was overheard on two other occasions making similar statements about his time in jail over his temper to a visitor and then a house supervisor.

[Appellant's] anger seemed to peak over hospital staff refusing to permit his partner to smoke in the room or to go outside to smoke. He threatened Dr. Satorie that if anyone laid a hand on his partner when she attempted to go outside to smoke he would become angry, punch the wall in and hurt somebody. He informed both

Dr. Satorie and Nurse Mastromatteo separately when discussing the smoking issue that he was the president of a motorcycle gang and that he would have that gang come to the hospital and make things ugly[,] like he did on a prior occasion at a hospital in Williamsport. In response to this final, specific threat, Dr. Satorie and Nurse Mastromatteo contacted hospital administration[,] which resulted in security and police being contacted and responding. Due to the nature of the threats concerning the motorcycle gang, a decision was made to put the hospital into a lockdown situation. [Appellant] was arrested and the hospital remained in lockdown from approximately 6:00 p.m. on November 20, 201[8,] until sometime between 6:30 a.m. and 8:00 a.m. on November 21, 201[8].

[Following a three day jury trial, Appellant was convicted of two counts of terroristic threats, one graded as a felony of the third degree and the other graded as a misdemeanor of the second degree.] After completion of a [pre-sentence investigation report], [Appellant] was sentenced on August 26, 2019 to three to seven years of incarceration [in a state correctional institution] on the felony count of terroristic threats and a concurrent one to five years of incarceration on the misdemeanor count of terroristic threats. Appellant] filed a post[-]sentence motion on September 4, 2019, which was denied by Order dated October 25, 2019. [Appellant] filed a [timely] notice of appeal on November 22, 2019.

*Commonwealth v. Burkhart*, 1916 MDA 2019, 2020 WL 6778766, at *1-2 (Pa. Super. filed Nov. 18, 2020) (unpublished mem.) (citation and footnote omitted). We add that the trial court found that Appellant was ineligible for the Recidivism Risk Reduction Incentive[2] (RRRI) program based on his prior convictions. *See* N.T. Sentencing Hr'g, 8/26/19, at 18.

On direct appeal, this Court affirmed Appellant's judgment of sentence in part, and reversed it in part. Specifically, this Court vacated Appellant's

---

[2] 61 Pa.C.S. §§ 4501-4512.

sentence for the misdemeanor count of terroristic threats, concluding that it should have merged with Appellant's concurrent sentence for the felony count.[3] **Burkhart**, 2020 WL 6778766 at *7. Appellant did not file a petition for allowance of appeal with our Supreme Court.

On February 8, 2021, Appellant filed a timely *pro se* PCRA petition, asserting that both his trial and appellate counsel had been ineffective, and raising other claims of trial court error. *Pro Se* PCRA Pet., 2/8/21, at 1-5. The PCRA court subsequently appointed Christopher P. Lyden, Esq. (PCRA counsel) to represent Appellant.[4] On April 28, 2021, PCRA counsel filed a **Turner**/**Finley**[5] no-merit letter and a motion for leave to withdraw. Subsequently, on April 30, 2021, the PCRA court filed its notice of intent to dismiss Appellant's PCRA petition without hearing pursuant to Pa.R.Crim.P. 907 and granted PCRA counsel's motion to withdraw. Appellant filed, among

_____

[3] This Court also vacated the conditions of Appellant's sentence insofar as the trial court was ordering mandatory conditions on Appellant's state parole instead of making recommendations to the Pennsylvania Board of Probation and Parole (Parole Board). **See Burkhart**, 2020 WL 6778766 at *8.

[4] After PCRA counsel was appointed, Appellant filed multiple *pro se* pleadings with the PCRA court. The clerk of court accepted these pleadings for filing, time stamped them, docketed them with the date of receipt, placed them in the record, and forwarded copies to PCRA counsel and the Commonwealth. **See** Pa.R.Crim.P. 576(A)(4).

[5] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 4 -

others, a *pro se* motion to proceed *pro se* on May 6, 2021, and a *pro se* response to the Rule 907 notice on May 19, 2021.

On May 20, 2021, the PCRA court dismissed Appellant's PCRA petition. Appellant filed a timely notice of appeal and a timely court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's issues.

On November 29, 2021, Appellant filed an application for relief with this Court seeking immediate parole if this Court were to grant Appellant a new trial. App. for Relief, 11/29/21, at 2. This Court denied that application without prejudice to Appellant's ability to seek relief in the appropriate forum on December 9, 2021. Subsequently, on December 13, 2021, Appellant filed a second application for relief, in which he requested that this Court vacate his judgment of sentence, hold PCRA counsel in contempt, hold a Commonwealth witness in contempt, and admonish the trial court and the Commonwealth for purportedly violating the Rules of Criminal Procedure and Evidence during Appellant's trial. App. for Relief, 12/13/21, at 1-3. On December 14, 2021, this Court denied Appellant's second application for relief without prejudice to raise any properly preserved issues with the merits panel.

On December 28, 2021, Appellant filed a third application for relief, in which he requested that this Court grant his November 29, 2021 and December 13, 2021 applications. App. for Relief, 12/28/21. On January 19, 2022, Appellant filed a fourth application for relief. Therein, Appellant requested that this Court reverse his judgment of sentence and grant him a

new trial, order his immediate parole, hold PCRA counsel in contempt, and hold the Commonwealth's witnesses in contempt. App. for Relief, 1/19/22, at 1-11. Appellant filed his fifth application for relief on March 4, 2022. In that application, Appellant summarized the arguments raised in his brief and requested that this Court grant him a new trial, or in the alternative, vacate his judgment of sentence. App. for Relief, 3/4/22, at 1a-13.

Appellant raises numerous issues on appeal,[6] including (1) ineffective assistance by trial, appellate, and PCRA counsel; (2) violations of his due process rights; (3) prosecutorial misconduct by the Commonwealth; (4) the weight and the sufficiency of the evidence; (5) the constitutionality of the terroristic threats statute, and (6) his eligibility for a RRRI sentence. **See** Appellant's Brief at 1-22.

As a preliminary matter, we consider whether Appellant's brief substantially complies with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure, which we may address *sua sponte*. **See** Pa.R.A.P. 2114-2119 (explaining the specific requirements for each section of an appellate brief); ***see also Commonwealth v. Wholaver***, 903

---

[6] As explained below, Appellant's brief does not include a statement of questions involved. Therefore, we have summarized Appellant's issues as they are presented in the argument section of his brief. We have combined Appellant's tenth, eleventh, and twelfth claims regarding sufficiency of the evidence regarding the intent to terrorize another. **See** Appellant's Brief at 14-22.

A.2d 1178, 1184 (Pa. 2006) (holding that an appellate court may find waiver *sua sponte*).

> When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).
>
> This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101.

***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2012) (some citations omitted); ***see also Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa. Super. 2001) (stating that "[w]hen a court has to guess what issues an appellant is appealing, that is not enough for meaningful review" (citations omitted)).

Further, "our appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief." ***Commonwealth v. Briggs***, 12 A.3d 291, 343 (Pa. 2011). Our Supreme Court has held that when an appellant attempts to present issues by incorporating by reference another document into his brief, those issues are waived. ***Id.***

- 7 -

"Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1037-38 (Pa. Super. 2018) (citation omitted). Also, this Court has explained that "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the [PCRA] court, thereby preserving it for appellate review." ***Commonwealth v. Baker***, 963 A.2d 495, 502 n.6 (Pa. Super. 2008) (citations omitted). Lastly, "boilerplate allegations and bald assertions . . . cannot satisfy [an appellant's] burden to prove that counsel was ineffective." ***Commonwealth v. Paddy***, 15 A.3d 431, 443 (Pa. 2011).

Here, Appellant's brief does not contain a statement of questions presented or a statement of the case indicating where Appellant raised his instant claims before the PCRA court. ***See*** Pa.R.A.P. 2116, 2117(c). Likewise, the argument section of Appellant's brief does not specifically state where he preserved his issues before the PCRA court. ***See*** Pa.R.A.P. 2119(e). Instead, Appellant broadly asserts that he raised his issues in his various *pro se* pleadings, which does not substantially comply with our Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2117(c), 2119(e); ***see also Baker***, 963 A.2d at 502 n.6 (explaining that "it is not the responsibility of this Court to scour the record" to determine if an appellant has preserved an issue for appellate review (citations omitted)).

In the argument section of his brief, Appellant presents bald assertions concerning ineffective assistance of counsel and errors by both the trial court

and PCRA court. *See Paddy*, 15 A.3d at 443 (stating that "boilerplate allegations and bald assertions . . . cannot satisfy a petitioner's burden to prove that counsel was ineffective"). Although Appellant has cited legal authorities, he has failed to develop his claims with pertinent discussion of those authorities. *See* Pa.R.A.P. 2119(a); *Hardy*, 918 A.2d at 771. Additionally, while Appellant describes alleged errors that occurred at trial, he does not provide any citations to the record. *See* Pa.R.A.P. 2119(c); *Hardy*, 918 A.2d at 771.

Finally, we note that Appellant has filed eight addendums to his brief, some of which contain additional argument, copies of the *pro se* pleadings he filed with the PCRA court, or exhibits. Several times in his brief, Appellant refers this Court to these addendums for a further discussion of the issues presented in his brief. *See, e.g.*, Appellant's Brief at 1 (explaining that Appellant's claims of ineffective assistance of counsel are "raised briefly here, but with more detail within the attached 'Addendum A', please review"). Appellant's use of these addendums to supplement his brief violates our Supreme Court's prohibition against incorporating by reference additional documents into an appellate brief. *See Briggs*, 12 A.3d at 343.

Under these circumstances, we must conclude that Appellant has waived his challenges to the trial court's evidentiary rulings, the weight and sufficiency of the evidence, the constitutionality of the terroristic threats statute, and his claims of ineffective assistance of counsel. Therefore, he is

not entitled to relief on these issues.[7]   ***See*** Pa.R.A.P. 2116, 2117, 2119; ***Briggs***, 12 A.3d at 343; ***Hardy***, 918 A.2d at 771.

However, to the extent Appellant argues that the PCRA court erroneously found him ineligible for the RRRI program, ***see*** Appellant's Brief at 5, that claim goes to the legality of Appellant's sentence.   ***See Commonwealth v. Finnecy***, 249 A.3d 903, 912 (Pa. 2021) (stating that a claim that the trial court failed to impose a RRRI sentence on an eligible defendant implicates the legality of the sentence); ***see also Commonwealth v. Cullen-Doyle***, 164 A.3d 1239 (Pa. 2017)).  Therefore, we will address the merits of that issue on appeal.  ***See Finnecy***, 249 A.3d at 908 (explaining that a challenge to the legality of an RRRI sentence cannot be waived).

_____

[7] The PCRA court suggested that remand may be necessary for the PCRA court to consider Appellant's claims of ineffectiveness by PCRA counsel.  ***See*** PCRA Ct. Op., 7/21/21, at 1-2, 6-7 (citing ***Commonwealth v. Betts***, 240 A.3d 616 (Pa. Super. 2020)).   However, our review of Appellant's *pro se* motion to proceed *pro se* and response to the Rule 907 notice confirms that Appellant did not raise any claims of ineffective assistance by PCRA counsel before the PCRA court.  Regardless, after this Court announced its decision in ***Betts***, our Supreme Court has held that a PCRA petitioner may "raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Commonwealth v. Bradley***, 261 A.3d 381, 401 (Pa. 2021) (footnote omitted).

Appellant has raised claims of PCRA counsel's ineffectiveness for the first time on appeal, however, for the reasons stated above, Appellant has not developed his claims to the point where it is necessary to remand the matter to the PCRA court for consideration of his claims.  ***Cf. Bradley***, 261 A.3d at 402 (explaining that "to advance a request for remand [for further development of the record, an appellant] would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness" (citation and quotation marks omitted)).

"Issues involving statutory interpretation like [RRRI eligibility] implicate questions of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Id.*** at 913 (citations omitted).  We may affirm the PCRA court on any grounds.  ***See Commonwealth v. Wiley***, 966 A.2d 1153, 1157 (Pa. Super. 2009) (stating this Court "may affirm the decision of the PCRA court if there is any basis on the record to support the PCRA court's action; this is so even if we rely on a different basis in our decision to affirm" (citation omitted and formatting altered)).

"The [RRRI] Act is intended to encourage eligible offenders to complete Department of Corrections programs that are designed to reduce recidivism. Eligible offenders may also be able to take advantage of a reduced sentence." ***Cullen-Doyle***, 164 A.3d at 1240 (citations omitted).  The RRRI Act requires the trial court to determine at the time of sentencing whether the defendant is an "eligible offender."  61 Pa.C.S. § 4505(a); ***see also*** 42 Pa.C.S. § 9756(b.1) (requiring the sentencing court to impose a RRRI minimum sentence when the defendant is eligible for one).

Section 4503, in relevant part, defines the persons eligible for RRRI as follows:

> A defendant or inmate convicted of a criminal offense who will be committed to the custody of the [D]epartment [of Corrections] and who meets all of the following eligibility requirements:
>
> > (1) Does not demonstrate a history of present or past violent behavior.
>
> *    *    *

(3) Has not been found guilty of or previously convicted of or adjudicated delinquent for or criminal attempt, criminal solicitation or criminal conspiracy to commit . . . a personal injury crime as defined under section 103 of the act of November 24, 1998 (P.L. 882, No. 111),[8] known as the Crime Victims Act, . . .

61 Pa.C.S. § 4503(1), (3).

For the purpose of Section 4503(3), a "personal injury crime" includes, in relevant part, "[a]n act, attempt or threat to commit an act which would constitute a misdemeanor or felony under . . . 18 Pa.C.S. Ch. 37 (relating to robbery)." 18 P.S. § 11.103.

In **Cullen-Doyle**, our Supreme Court examined whether a defendant's single burglary conviction demonstrated a "history of present or past violent behavior" for the purposes of Section 4503(1). **Cullen-Doyle**, 164 A.3d at 1240. Concluding that the legislative intent of the RRRI Act was to "offer greater reform opportunities for first-time offenders than for repeat offenders[,]" the Court held that the defendant's "single, present conviction for a violent crime does not constitute a history of violent behavior." **Id.** at 1243-44 (citations omitted); **see also Finnecy**, 249 A.3d at 916 (holding that "a single prior conviction for a non-enumerated crime demonstrating violent behavior does not qualify as a history of past violent behavior under the Section 4503[(1)] of the RRRI Act").

Here, the PCRA court discussed Appellant's RRRI eligibility in the context of Appellant's claim that trial counsel and appellate counsel were ineffective

---

[8] 18 P.S. § 11.103.

for failing to raise his RRRI eligibility.[9]  PCRA Ct. Op., 7/21/21, at 5.  Regarding

the arguable merit prong, the PCRA court concluded:

> According to 61 Pa.C.S.[] § 4503, an "eligible person" for the [RRRI] program is one who does not demonstrate a history of past or present violent behavior.
>
> In this case, there is evidence of both past and present violent behaviors.  [Appellant] has three separate convictions of robbery in Lycoming County in 1995 and 1996.  He also has a charge of simple assault which was reduced to harassment in Dauphin County in 2004.  Additionally, [Appellant's] conviction for which this PCRA arises was terroristic threats could also disqualify him for RRRI.  [Appellant] told several different hospital staff that he was going to punch them.  He also threatened to have his biker gang come to the hospital and harm the workers.  These facts also show the [Appellant's] tendency for violence which also eliminate him from the RRRI program.

*Id.* (formatting altered).[10]

As noted by the PCRA court, Appellant has three prior convictions for

robbery.  *See* N.T. Sentencing Hr'g, 8/26/19, at 15.  Robbery is codified under

Chapter 37 of Title 18, and at a minimum constitutes a felony of the third

degree.  *See* 18 Pa.C.S. § 3701(a)(1), (b).  Robbery, therefore, is a personal

injury crime which renders Appellant ineligible for the RRRI program under

subsection 4503(3).  *See* 61 Pa.C.S. § 4503(3); 18 P.S. § 11.103.  Because

Appellant has more than one prior conviction for robbery, which is a personal

---

[9] To the extent appellant argues that trial counsel, appellate counsel, and PCRA counsel were ineffective for failing to raise the issue of his RRRI eligibility, those claims are waived for the reasons stated above.

[10] The PCRA court also concluded that because Appellant presented this ineffectiveness claim for the first time in his Rule 1925(b) statement, it was waived.  *Id.*

injury crime, neither **Finnecy** nor **Cullen-Doyle** is applicable to the facts of this case. Therefore, we agree with the PCRA court's conclusion that Appellant was not eligible for RRRI, albeit under subsection 4503(3) instead of subsection 4503(1). **See Wiley**, 966 A.2d at 1157 (we may affirm the PCRA court on any legal basis).

## Applications for Relief

We must also address Appellant's applications for relief. In his first application for relief pending before this Court (his third overall), Appellant requests that this Court grant his previously filed applications for relief. App. for Relief, 12/28/21, at 2. This Court denied those applications on December 9, and 14, 2021, respectively. Therefore, we deny Appellant's December 28, 2021 application for relief as moot.

In his second application for relief pending before this Court (his fourth overall), Appellant makes several requests, including that this Court reverse his judgment of sentence and order his immediate parole pending a new trial.[11] App. for Relief, 1/19/22, at 1-6, 11.

We address each request separately. Appellant raises two challenges to the legality of his sentence. First, he argues that the trial erred in relying on his prior convictions during sentencing, which resulted in an illegal sentence. **Id.** at 2. Second, Appellant contends that because a previous panel of this

---

[11] In his application for relief, Appellant includes several claims that he has already raised in his brief. Because we have already addressed those issues and found them either waived or meritless, we do not address them here.

Court vacated his concurrent sentence for the misdemeanor count of terroristic threats on direct appeal, his "aggregated sentence" is now illegal. *Id.* at 2-3.

"If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. Likewise, a sentence that exceeds the statutory maximum is illegal." ***Commonwealth v. Infante***, 63 A.3d 358, 363 (Pa. Super. 2013) (citations omitted and formatting altered). While challenges to the legality of sentence are cognizable on PCRA review, ***see Finnecy***, 249 A.3d at 912, challenges to the discretionary aspects of the sentence are not. ***See Commonwealth v. Torres***, 223 A.3d 715, 716 (Pa. Super. 2019).

Appellant's claim that the trial court erred in considering his prior convictions, although framed as a challenge to the legality of his sentence, actually goes to the discretionary aspects of his sentence. ***See Commonwealth v. Sanchez***, 848 A.2d 977, 986 (Pa. Super. 2004) (holding that the miscalculation of a defendant's prior record score "constitutes a challenge to the discretionary aspects of [a] sentence" (citation omitted)). Therefore, this claim is not cognizable on PCRA review. ***See Torres***, 223 A.3d at 716.

To the extent Appellant argues that his present sentence is illegal after a prior panel of this Court vacated his concurrent sentence, that claim is meritless. Appellant was convicted of two counts of terroristic threats, one graded as a felony of the third degree and the other as a misdemeanor of the

first degree. The trial court imposed **concurrent** sentences of three to seven years' imprisonment and one to five years' imprisonment, respectively. On direct appeal, this Court held that Appellant's misdemeanor conviction merged with his felony conviction, and vacated the concurrent sentence of one to five years for the misdemeanor charge. ***See Burkhart***, 2020 WL 6778766 at *7. Because the trial court imposed concurrent sentences, this Court's decision did not affect Appellant's aggregate sentence of three to seven years. ***See id.*** Further, the maximum possible sentence for a felony of the third degree is seven years of imprisonment. ***See*** 18 Pa.C.S § 1103(3). Therefore, because Appellant's sentence does not exceed the lawful maximum, it is a legal sentence. ***See id.***

Next, Appellant asserts that the trial court lacked jurisdiction to impose his sentence. App. for Relief, 1/19/22, at 3. "An objection to lack of subject matter jurisdiction can never be waived . . . ." ***Commonwealth v. Jones***, 929 A.2d 205, 208 (Pa. 2007) (citations omitted). A challenge to subject-matter jurisdiction presents a question of law, so our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Seiders***, 11 A.3d 495, 496-97 (Pa. Super. 2010). There are the "two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged" that complies with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution. ***Jones***, 929 A.2d at 210. "Controversies

stemming from violations of the Crimes Code are entrusted to the original jurisdiction of the courts of common pleas for resolution." ***Seiders***, 11 A.3d at 497 (citation omitted).

Here, the Lancaster County Court of Common Pleas, Criminal Division, was competent to hear Appellant's case, which involved violations of the Pennsylvania Crimes Code occurring in Lancaster County. ***See Commonwealth v. Kohler***, 811 A.2d 1046, 1050 (Pa. Super. 2002) (holding that a county court of common pleas has jurisdiction over offenses that take place within its borders). Further, the Commonwealth provided notice to the Appellant of the charges in an information and subsequent amended informations. ***See, e.g.***, Criminal Information, 12/18/18; Am. Criminal Information, 6/3/19. Therefore, we conclude that the trial court had subject-matter jurisdiction to try and sentence Appellant. ***See Jones***, 929 A.2d at 210; ***Seiders***, 11 A.3d at 497.

Appellant also asks this Court to order immediate parole. ***See*** App. for Relief, 1/19/22, at 11. It is well settled that the Parole Board has exclusive authority to parole convicted offenders serving a sentence of greater than two years. ***See*** 61 Pa.C.S. § 6132(a); ***see also Commonwealth v. Miller***, 770 A.2d 362, 363 (Pa. Super. 2001) (explaining when authority to parole offenders lies with the Parole Board and when it lies with the trial court). Here, the trial court imposed an aggregate sentence of three to seven years' incarceration. Therefore, this Court lacks jurisdiction to order Appellant's

release on parole. ***See*** 61 Pa.C.S. § 6132(a). Accordingly, we deny his application without prejudice to seek relief from the Parole Board.

Appellant next requests that this Court hold PCRA counsel in contempt for allegedly failing to comply with a PCRA court order to turn over his file to Appellant. App. for Relief, 1/19/22, at 6-11. Appellant also asks this Court to hold the Commonwealth's witnesses in contempt for allegedly committing perjury during Appellant's trial. ***Id.*** at 10.

> Our Supreme Court has explained:
>
> Courts possess an inherent power to enforce their orders by way of the power of contempt. Generally, contempt can be criminal or civil in nature, and depends on whether the core purpose of the sanction imposed is to vindicate the authority of the court, in which case the contempt is criminal, or whether the contempt is to aid the beneficiary of the order being defied, in which case it is civil. Civil contempt orders, in turn, usually occur as one of two sub-species: compensatory or coercive. Compensatory civil contempt, as its moniker suggests, involves compensation that is paid to the party whom the contempt has harmed. On the other hand, a coercive civil contempt citation . . . is intended to coerce the disobedient party into compliance with the court's order through incarceration and/or monetary punishment.

***Commonwealth v. Bowden***, 838 A.2d 740, 760-61 (Pa. 2003) (citations and footnote omitted).

Holding a person or entity in contempt, whether civil or criminal, requires the court to find facts establishing the contempt. ***See, e.g.***, ***Commonwealth v. Moody***, 125 A.3d 1, 5 n.4 (Pa. 2015) (explaining that criminal contempt requires proof beyond reasonable doubt of four elements);

*Harcar v. Harcar*, 982 A.2d 1230, 1234-35 (Pa. Super. 2009) (explaining that the elements of civil contempt including a hearing and an adjudication).

"[I]t is not an appellate court's function to engage in fact finding." *BouSamra v. Excela Health*, 210 A.3d 967, 979-80 (Pa. 2019) (citation omitted). Furthermore, a trial court may enforce its own orders even after an appeal has been taken. *See* Pa.R.A.P. 1701(b)(2).

Appellant requests that this Court hold his former PCRA counsel in contempt for allegedly failing to comply with the PCRA court's order to turn over his file to Appellant. This Court may not engage in the fact finding required to hold someone in contempt. *See BouSamra*, 210 A.3d at 979-80. Further, because Appellant claims that PCRA counsel has violated a PCRA court order, it is within the power of the PCRA court to enforce its order by holding PCRA counsel in civil contempt after an appropriate hearing. *See Bowden*, 838 A.2d at 760-61; *see also* Pa.R.A.P. 1701(b)(2). Therefore we deny Appellant's request to hold PCRA counsel in contempt because this Court is not the proper forum for a petition for contempt of a PCRA court order.

Likewise, we deny Appellant's request to hold the Commonwealth's witnesses in contempt because this Court does not engage in fact finding, and is therefore not the appropriate forum for his contempt petition.[12] *See BouSamra*, 210 A.3d at 979-80.

---

[12] In any event, we note that, were we to hold PCRA counsel or any of the Commonwealth's witnesses in contempt without notice and an opportunity to
*(Footnote Continued Next Page)*

- 19 -

Because we have concluded that all of the issues raised in Appellant's January 19, 2022 application for relief are waived, meritless, or seek redress for issues that this Court has no authority to grant, we deny Appellant's January 19, 2022 application for relief.

In his third application for relief pending before this Court (his fifth overall), Appellant repeats the arguments he raised in his brief and requests that this Court grant him a new trial, or in the alternative, vacate his judgment of sentence. App. for Relief, 3/4/22, at 1a-13. Because we have already concluded that Appellant is not entitled to relief on these issues, we deny his March 4, 2022 application for relief.

## Conclusion

In sum, we conclude that all of the claims included in Appellant's brief are either waived or meritless. Therefore, we affirm the PCRA court's order.

Further, we conclude that Appellant's requests for relief are either moot, meritless, or seek redress for issues that this Court has no authority to grant. For these reasons we deny Appellant's applications for relief.

Order affirmed. Applications for relief denied.

---

be heard, it would violate those individuals' rights to due process. ***See, e.g.***, ***Commonwealth v. Turner***, 80 A.3d 754, 764 (Pa. 2013) (explaining that "the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case" (citations omitted)). Therefore, even if we could engage in fact finding, we would decline to do so on that basis.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2022